CASE 17.—ACTION BY J. N. GRADY AND ANOTHER AGAINST THE WHITE COMMON SCHOOL DISTRICT AND OTHERS.—April 20, 1910.

## White Common School District, No. 12, &c. v. Grady, &c.

Appeal from McLean Circuit Court.

T. F. BIRKHEAD, Circuit Judge.

Judgment for plaintiffs, defendants appeal.—Affirmed.

1. Schools and School Districts—Actions—Breach—Sufficiency of Evidence—Damage.—In an action for breach of a school district's contract to pay plaintiffs the amount of the poll and property tax collected in the district for three years as the price of a schoolhouse evidence held to show that, if the school trustees had used diligence in having the property within the district listed for taxation, plaintiffs would have received an additional amount equal to the verdict for them.

2. Schools and School Districts—Contracts—Construction—Performance.—Where trustees of a school district agreed that plaintiffs should receive the amount collected as poll and property tax in the school district for three years in payment of a schoolhouse built, the trustees did not perform the contract if they negligently omitted to collect a part of the taxes due; they being bound to use diligence in listing the property for taxation.

MILTON CLARK and J. W. BOSTON for appellants.

LITTLE & SLACK, JOE H. MILLER and W. A. TAYLOR for appellees.

Opinion of the Court by Judge Nunn—Affirming.

The appellee, J. N Grady, erected a schoolhouse on the lot of appellant in the year 1898, for which appellant agreed to pay him something over $2,600, and made a payment of $355. Soon after this payment was made both parties conceded that the district was not bound by its obligation, for the reason that it had no right to contract a debt in any manner or for any purpose to an amount exceeding in any year the income provided for such year without the assent of two-thirds of the voters of the district. See section 157 of the Constitution and the following cases construing same: Brown v. Board of Education, 108 Ky. 783, 57 S. W. 612, 22 Ky. Law Rep. 483, Board of Trustees v. Postell, etc., 121 Ky. 67, 88 S. W. 1065, 28 Ky. Law Rep. 37, and Howard v. Board of Trustees, 102 S. W. 318, 31 Ky. Law Rep. 399. The consequence was that the district ceased to pay, and Grady ceased to try to collect, the amount due him under the contract. In the meantime Grady had assigned to Lane, his coappellee, a one-half interest in his claim against the district, and they brought suit against the district to recover the house that Grady had erected upon the property. The court sustained their claim, and gave them six months in which to move the house from the lot. This judgment was obtained under the authority of the case of Board of Trustees v. Postell, etc., 121 Ky. 67, 88 S. W. 1065, 28 Ky. Law Rep. 37. Prior to the expiration of the six months, the county superintendent of schools made an order directing the trustees of that district

vol. 138—9

to erect or buy a schoolhouse. In obedience thereto, the trustees met, and with the attorneys of appellees, who appear to be non-residents of that county, entered into an agreement by which the district eventually possessed and became the owner of the house. With reference to the terms of this agreement, this litigation arose. Appellants contend that the agreement was reduced to writing, and provided that the trustees should take the necessary steps to submit the question to the voters of the district whether or not they would vote a tax on the school district for a term of 3 years at 25 cents each year on each $100 worth of property, and $1 poll on all persons 21 years of age and over; that appellees agreed to accept the money so raised, less $355 which they had already been paid, as the full purchase price for the property; that the matter was submitted to the people for a vote, which resulted in more than two-thirds of the voters voting in favor of the 3 years' taxation at the rates stated, for the purpose of raising a fund to purchase the property; that the fund derived from the tax for the year 1904, the first year, was $619, for the second year, 1905, $576, and for the third year, 1906, $467. The first two sums were paid to appellees, and the last, less $355, was tendered to them, but refused. Appellees contend that the agreement was that they were to receive $1,800 in addition to the $355 they had already received; that the $355 was discussed at the time of the agreement, and appellants wanted them to credit the $1,800 with that sum, but they declined to do so. Calculations were made at the time estimating what sum would be realized from the tax at the rates named, and it estimated something like $2,100 or $2,200, which would pay the $1,800, and leave that balance in the hands of the trustees.

Appellees agree with appellants as to the amount they have received, to wit, $619 for the first year and $576 for the second year, and that they were offered a check for $112, the balance of the $467 after deducting the $355, which they refused to receive in satisfaction of their claim. They alleged in an amended petition that this sum did not truly represent the amount of taxes at the rates named which should have been collected on the property and polls within the school district. They charged that the two banks within the district had not been assessed or paid anything in the way of a franchise tax for the three years named, which tax would have amounted to about $130; that 40 or 50 persons escaped taxation for those years because of the want of care and diligence on the part of the trustees; that if the trustees had exercised care and diligence in listing the property and polls for taxation, and in collecting same, the amount collected would have reached something over $2,400, out of which they could have been paid their $1,800, and left appellants more than $355, the amount in dispute.

The lower court found in favor of appellees in their contention that they should receive $1,800 for the house, and rendered a judgment for $467, the amount prayed for. The evidence was very conflicting upon this question. Conceding, however, that the position taken by appellants is correct—i. e., that appellees were to receive the amount collected as poll and property tax in the district for three years in satisfaction of the agreed purchase price of the house less $355, the amount they had already been paid—it appears that appellants did not use any care in having the property and polls in the district listed for taxation nor in collecting the taxes. In 1904 there

was realized $619, and it appears that all the property was not listed for taxation in that year, but, for some reason not accounted for, it decreased, until the third year it was only $467.   The proof shows that the list made the latter part of the year of 1907 for the tax to be paid in 1908 in the same district amounted to over $800.    There is no explanation given for this falling off of the amount of taxes between the years 1904 and 1907.   The panic was not on at that time.   It did not appear until afterwards, and it is a well-known fact that the value of property was gradually increased during the years named; and, in our opinion, if the trustees had used the slightest care and diligence in having the property and polls within the district listed for taxation, appellees would have been entitled to the amount for which the lower court rendered judgment.  The contract for the purchase of the property, as claimed by appellants, obligated the trustees to use such care and diligence in listing the property and polls for taxation and collecting same as above indicated. They did not have a right to be careless and negligent with reference to same and collect a portion of the taxes due thereunder, and pay it to appellees, and claim a compliance with their contract.

Therefore, in view of the contention of either party, appellees' have not obtained a judgment for too great a sum, and the judgment should be, and is, affirmed.